

Reginald McDaniel, Esq. (ASB-7676-L73M)
3720 4th Avenue South
Birmingham, AL 35222
205.222.8656 cell
205.433.6130 office
888.357.8447 fax
rdm@reginaldmcdaniel.com

Of Counsel to:
Michigan Consumer Credit Lawyers
22142 West Nine Mile Road
Southfield, MI 48033
Telephone:  (248) 353-2882
Facsimile:  (248) 353-4840

*Attorneys for Plaintiff,*
*Jack Alexander,*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Jack Alexander,<br><br>    Plaintiff,<br><br>    vs.<br><br>Trans Union, LLC,<br>a Delaware limited liability company,<br>Equifax Information Services, LLC,<br>a Georgia company, and<br>Ditech Financial, LLC,<br>a foreign limited liability company,<br><br>    Defendants. | Case No.:<br><br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

NOW COMES THE PLAINTIFF, JACK ALEXANDER, BY AND THROUGH COUNSEL, Reginald McDaniel, and for his Complaint against the Defendants, pleads as follows:

## JURISDICTION

1. Jurisdiction of this court arises under 15 U.S.C. §1681p.

2. This is an action brought by a consumer for violation of the Fair Credit Reporting Act (15 U.S.C. §1681 et. seq [hereinafter "FCRA"]).

## VENUE

3. The transactions and occurrences which give rise to this action occurred in the City of Huntsville, Madison County, Alabama.

4. Venue is proper in the Northern District of Alabama.

## PARTIES

5. The Defendants to this lawsuit are:

   a. Trans Union, LLC ("Trans Union") which is a Delaware limited liability company that maintains a registered agent in Montgomery County, Alabama;

b. Equifax Information Services, LLC ("Equifax") which is a Georgia company that maintains a registered agent in Montgomery County, Alabama: and

c. Ditech Financial, LLC ("Ditech") which is a foreign limited liability company that maintains a registered agent in Montgomery County, Alabama.

## GENERAL ALLEGATIONS

6. Ditech is reporting its trade line ("Errant Trade Line") on Mr. Alexander's Trans Union and Equifax credit files with incorrect late payment remarks and an incorrect pay status of "Account 120 Days Past Due."

7. In 1997, Mr. Alexander co-signed a loan with Ditech for his sister.

8. In 2008, Mr. Alexander filed for Chapter 7 Bankruptcy. However, he reaffirmed the Ditech account.

9. On January 21, 2009, Mr. Alexander's Chapter 7 Bankruptcy was discharged.

10. His sister made regular payments on the loan for about 15 years.

11. However, in 2015, Mr. Alexander's sister became disabled and her husband lost his business, so she stopped making payments on the Ditech loan.

12. In 2015, Ditech notified Mr. Alexander that the account was in default. Mr. Alexander then started contacting Ditech to try to work out a settlement.

3

13. On or about February 24, 2015, Mr. Alexander sent a letter to Ditech asking to settle the Ditech loan.

14. Mr. Alexander spoke with several representatives at Ditech throughout 2015, but none of the representatives got back to him about settling the account.

15. In January 2016, Ditech sent an inspector to look at the mobile home, for which the loan was obtained from Ditech, to evaluate its worth.

16. In March 2016, Mr. Alexander called Ditech and spoke with a representative, who told him it had not reached a decision regarding the worth of the mobile home.

17. In July 2016, Mr. Alexander spoke with a representative from Ditech and was told that it would agree to a settlement and would send him settlement documents.

18. On or about August 16, 2016, Mr. Alexander received an email from Ditech with an unsigned letter dated August 2, 2016 that offered to settle the Ditech account with for $7,500.00 as settlement in full.

19. Pursuant to the settlement terms, Ditech was to release the lien, title or manufacturer's statement of origin and the Note would be settled in full.

20. Ditech's letter also stated that after it received the settlement amount from Mr. Alexander, it would consider the account as "paid in full" and it would report it

4

to the credit reporting agencies as "account paid in full for less than the full balance."

21. Ditech's letter further stated that the settlement offer would expire on August 17, 2016.

22. Mr. Alexander called Ditech on August 16, 2016, the same day he received the letter, and stated that he wanted to accept Ditech's offer.

23. Ditech's representative told Mr. Alexander that Ditech would accept Mr. Alexander's check if it was received after August 17, 2016 and would honor the agreement.

24. Mr. Alexander was also told that Ditech would stop reporting negative information.

25. As of August 16, 2016, Ditech had not reported on the account for more than six months.

26. Pursuant to this information given to Mr. Alexander by Ditech, he sent a check to Ditech on August 17, 2016 in the amount of $7,500.00 to settle the account.

27. On the check, Mr. Alexander wrote, "Upon cashing this check, Ditech Financial, LLC, has accepted these funds as payment in full for account number [redacted], will release the lien, title or manufacture's statement of origin, will remove all negative information from the debtor's credit reports for this account, and the Note will be settled in full with prejudice."

28. Ditech accepted and deposited Mr. Alexander's check.

29. However, Ditech applied the $7,500 check to the account as though it were a regular payment, rather than a settlement of the outstanding debt. Mr. Alexander spent 10 days calling Ditech to get the payment applied properly.

30. On or about September 14, 2016, Mr. Alexander received a letter from Ditech which stated that the Ditech account had been settled in full.

31. On or about February 13, 2017, Mr. Alexander received a letter from Ditech which stated, among other things, that it would report the account to the credit bureaus as "account paid in full for less than the full balance."

32. On or about March 13, 2017, Mr. Alexander obtained his credit files and noticed that Ditech was reporting the Errant Trade Line.

33. On or about March 31, 2017, Mr. Alexander sent a letter to Trans Union and Equifax disputing the errant status and late payments on the Errant Trade Line. In the dispute letter Mr. Alexander explained the settlement agreement he reached with Ditech. He attached the letter from Ditech dated August 2, 2016 and the check he wrote to it confirming the same. He requested that the "Late 120 Days" status be removed from the Errant Trade Line as well as the false late payments.

34. Upon information and belief, Trans Union and Equifax forwarded Mr. Alexander's dispute to Ditech.

35. On or about April 21, 2017, Mr. Alexander received Equifax's investigation results, which showed that Ditech retained the errant Pay Status of "Account 120 Days Past Due" on the Errant Ditech Trade Line.

36. On April 21, 2017, Mr. Alexander obtained his Equifax credit file which showed that Ocwen was reporting a balance of $48,570, a monthly payment of $391.00 and comments that the account was reaffirmed ("Ocwen Trade Line").

37. This is false as the Ocwen Trade Line was discharged in his Chapter 7 Bankruptcy.

38. On or about April 21, 2017, Mr. Alexander submitted a letter to Equifax disputing the Ocwen Trade Line and requesting that the balance, monthly payments and comments stating the trade line was reaffirmed to be removed and report the trade line as discharged through Chapter 7 Bankruptcy.

39. Upon information and belief, Equifax forwarded Mr. Alexander's dispute to Ocwen.

40. On or about May 20, 2017, Mr. Alexander received Trans Union's investigation result regarding the Errant Trade Line, which showed that Ditech retained the errant late payments and errant Pay Status of "Account 120 Days Past Due" on the Errant Ditech Trade Line.

41. To date, Mr. Alexander has not received Equifax's investigation results regarding the Ocwen Trade Line.

42. As a direct and proximate cause of the Defendants' negligent and/or willful failure to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., Plaintiff has suffered credit and emotional damages. Due to the Defendants' failure to correct the errors in his credit file, Plaintiff has been forced to refrain from applying for new credit or more favorable terms on existing credit lines. Plaintiff has also experienced undue stress and anxiety due to Defendants' failure to correct the errors in his credit file or improve his financial situation by obtaining new or more favorable credit terms as a result of the Defendants' violations of the FCRA.

## **COUNT I**

## **NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY DITECH**

43. Plaintiff realleges the above paragraphs as if recited verbatim.

44. After being informed by Trans Union and Equifax of Mr. Alexander's consumer dispute of the incorrect late payment remarks and incorrect status of the Errant Trade Line, Ditech negligently failed to conduct a proper investigation of Mr. Alexander's dispute as required by 15 USC 1681s-2(b).

45. Ditech negligently failed to review all relevant information available to it and provided by Trans Union and Equifax in conducting its reinvestigation as required by 15 USC 1681s-2(b). Specifically, it failed to direct Trans Union

and Equifax to remove the late payment remarks and correct the erroneous pay status of the Errant Trade Line.

46. The Errant Trade Line is inaccurate and creating a misleading impression on Mr. Alexander's consumer credit files with Trans Union and Equifax to which it is reporting such trade line.

47. As a direct and proximate cause of Ditech's negligent failure to perform its duties under the FCRA, Mr. Alexander has suffered damages, mental anguish, suffering, humiliation and embarrassment.

48. Ditech is liable to Mr. Alexander by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 USC 1681o.

49. Mr. Alexander has a private right of action to assert claims against Ditech arising under 15 USC 1681s-2(b).

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against the Defendant Ditech for damages, costs, interest and attorneys' fees.

## COUNT II

**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY DITECH**

50. Plaintiff realleges the above paragraphs as if recited verbatim.

51. After being informed by Trans Union and Equifax that Mr. Alexander disputed the accuracy of the information it was providing, Ditech willfully failed to conduct a proper reinvestigation of Mr. Alexander's dispute.

52. Ditech willfully failed to review all relevant information available to it and provided by Trans Union and Equifax as required by 15 USC 1681s-2(b).

53. As a direct and proximate cause of Ditech's willful failure to perform its duties under the FCRA, Mr. Alexander has suffered damages, mental anguish, suffering, humiliation and embarrassment.

54. Ditech is liable to Mr. Alexander for either statutory damages or actual damages he has sustained by reason of its violations of the FCRA in an amount to be determined by the trier fact, together with an award of punitive damages in the amount to be determined by the trier of fact, as well as for reasonable attorneys' fees and he may recover therefore pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against the Defendant Ditech for the greater of statutory or actual damages, plus punitive damages, along with costs, interest and attorneys' fees.

## COUNT III

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY TRANS UNION

55. Plaintiff realleges the above paragraphs as if recited verbatim.

56. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Alexander as that term is defined in 15 USC 1681a.

57. Such reports contained information about Mr. Alexander that was false, misleading, and inaccurate.

58. Trans Union negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Mr. Alexander, in violation of 15 USC 1681e(b).

59. After receiving Mr. Alexander's consumer dispute to the Errant Trade Line, Trans Union negligently failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

60. As a direct and proximate cause of Trans Union's negligent failure to perform its duties under the FCRA, Mr. Alexander has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

61. Trans Union is liable to Mr. Alexander by reason of its violation of the FCRA in an amount to be determined by the trier fact together with his reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against Trans Union for actual damages, costs, interest, and attorneys' fees.

## COUNT IV

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY TRANS UNION

62. Plaintiff realleges the above paragraphs as if recited verbatim.

63. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Alexander as that term is defined in 15 USC 1681a.

64. Such reports contained information about Mr. Alexander that was false, misleading, and inaccurate.

65. Trans Union willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported to one or more third parties pertaining to Mr. Alexander, in violation of 15 USC 1681e(b).

66. After receiving Mr. Alexander's consumer dispute to the Errant Trade Line, Trans Unio willfully failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

67. As a direct and proximate cause of Trans Union's willful failure to perform its duties under the FCRA, Mr. Alexander has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

68. Trans Union is liable to Mr. Alexander by reason of its violations of the FCRA in an amount to be determined by the trier of fact together with his reasonable attorneys' fees pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grants him a judgment against Trans Union for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

## COUNT V

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY EQUIFAX

69. Plaintiff realleges the above paragraphs as if recited verbatim.

70. Defendant Equifax prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Alexander as that term is defined in 15 USC 1681a.

71. Such reports contained information about Mr. Alexander that was false, misleading, and inaccurate.

72. Equifax negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Mr. Alexander, in violation of 15 USC 1681e(b).

73. After receiving Mr. Alexander's consumer dispute to the Errant Trade Line, Equifax negligently failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

74. Equifax negligently failed to provide Plaintiff with the results of its reinvestigation for the disputed Ocwen Trade Line before the end of the 30-day period on the date which Equifax received notice of the dispute from Plaintiff as required by 15 U.S.C. 1681i.

75. As a direct and proximate cause of Equifax's negligent failure to perform its duties under the FCRA, Mr. Alexander has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

76. Equifax is liable to Mr. Alexander by reason of its violation of the FCRA in an amount to be determined by the trier fact together with his reasonable attorneys' fees pursuant to 15 USC 1681o.

WHEREFORE, PLAINTIFF PRAYS that this court grants him a judgment against Equifax for actual damages, costs, interest, and attorneys' fees.

## COUNT VI

**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY EQUIFAX**

77. Plaintiff realleges the above paragraphs as if recited verbatim.

78. Defendant Equifax prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Mr. Alexander as that term is defined in 15 USC 1681a.

79. Such reports contained information about Mr. Alexander that was false, misleading, and inaccurate.

80. Equifax willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported to one or more third parties pertaining to Mr. Alexander, in violation of 15 USC 1681e(b).

81. After receiving Mr. Alexander's consumer dispute to the Errant Trade Line, Equifax willfully failed to conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i.

82. Equifax willfully failed to provide Plaintiff with the results of its reinvestigation for the disputed Ocwen Trade Line before the end of the 30-day period on the date which Equifax received notice of the dispute from Plaintiff as required by 15 U.S.C. 1681i.

83. As a direct and proximate cause of Equifax's willful failure to perform its duties under the FCRA, Mr. Alexander has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

84. Equifax is liable to Mr. Alexander by reason of its violations of the FCRA in an amount to be determined by the trier of fact together with his reasonable attorneys' fees pursuant to 15 USC 1681n.

WHEREFORE, PLAINTIFF PRAYS that this court grants him a judgment against Equifax for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

## JURY DEMAND

Plaintiff hereby demands a trial by Jury.

DATED: July 31, 2017

By: s/Reginald McDaniel, Esq.
Reginald McDaniel
Attorney for Plaintiff,
3720 4th Avenue North
Birmingham, AL 35222